THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHWESTERN DIVISION

SABRE TAYLOR o/b/o )
COLTON TAYLOR o/b/o )
BRET TAYLOR, )
 )
          Plaintiff, )
 )
vs. )    Case No. 08-5009-CV-SW-ODS
 )
MICHAEL J. ASTRUE, )
Commissioner of Social Security, )
 )
          Defendant. )

ORDER AND OPINION AFFIRMING
COMMISSIONER'S FINAL DECISION DENYING BENEFITS

Plaintiff appeals the Commissioner's final decision denying his application for Title II benefits. The Commissioner's decision is affirmed.

I. BACKGROUND

Plaintiff was born in April 1958 and graduated from high school. He has prior work experience as a warehouse worker, courier, and licensing clerk. He filed his application for benefits in March 2003, alleging he became disabled on December 1, 2002, due to pain in his back, neck, shoulder, and extremities.[1]

On November 8, 2002, Plaintiff saw his regular doctor (Dr. Bret Bowling) with increasing pain in his hand, wrist and arm. He was diagnosed as suffering from carpal tunnel syndrome that was worse in his right hand than in his left. He was given wrist splints and medication. Later that month, Dr. Bowling arranged for Plaintiff to see an orthopedist (Dr. Timothy Phipps). EMG testing confirmed moderate to severe carpal

---

[1] Plaintiff also documents mental/psychological problems, some of which were related to use of illegal drugs and most or all of which were temporary in nature. Plaintiff does not raise an issue regarding the ALJ's conclusions on these issues, so there is no need for a lengthy discussion of these matters.

tunnel syndrome, and Plaintiff underwent nerve release surgery on his left hand in December 2002 and on his right hand in January 2003. The surgeries successfully diminished Plaintiff's pain and enabling him to resume normal functioning. R. at 172-78.

Also in January 2003, Plaintiff saw Dr. Mark Jarek, a rheumatologist. Dr. Jarek reviewed an MRI performed on Plaintiff's back and saw two instances of spinal stenosis and offered a referral to a neurosurgeon. R. at 168. Later that month he went to the Mayo Clinic in Scottsdale, Arizona, for evaluation and treatment. Review of Plaintiff's MRI revealed "severe narrowing at L3-4 and L4-5" and disk space narrowing at C4-5 and C5-6. R. at 188. Plaintiff reported a "five year history of neck pain" that had "gotten worse over the past two months with no particular inciting event." R. at 185. The doctors at the Mayo Clinic found no reason to perform surgery and advised conservative treatment including medication, physical therapy, ultrasound, use of a TENS unit, and trigger point and epidural injections. R. at 182-86.

Plaintiff next saw Dr. Bowling on March 11, 2003, and reported that physical therapy had not been helpful and he was still experiencing pain in his neck and back as well as muscle spasms. Examination revealed a normal range of motion in Plaintiff's neck and muscle tenderness in his back. Dr. Bowling prescribed medication. R. at 144-45. One month later, Plaintiff reported he had stopped going to therapy and that the medication helped relieve the pain. He denied any new pain in his back or joints and indicated his spasms had improved. R. at 142. On April 28, Dr. Bowling issued an order that Plaintiff be provided a TENS unit. R. at 143. In May, Plaintiff denied any new pain in his joints or back, and Dr. Bowling described Plaintiff's neck and back pain as "stable." R. at 234. Similar reports were issued following Plaintiff's appointments in August 2003, R. at 232, and November 2003. R. at 230,

Plaintiff returned to the Mayo Clinic in late 2003 or early 2004. A report dated January 6, 2004, indicates Plaintiff had normal range of motion and did not have radicular pain. Plaintiff "had some pain with neck extension at the base of the neck and pain at the top of the shoulders and upper trapezius with lateral bending and rotation." He also exhibited normal gait, balance, coordination, strength and reflexes. Physical therapy was deemed to be the appropriate treatment. R. at 223. Physical therapy

2

commenced on January 9, at which time he was not in acute distress and exhibited "essentially functional range of motion in the cervical spine but with pain through mobility . . . ." R. at 220. Notes made contemporaneously with the physical therapy sessions report Plaintiff's condition improved and his pain and discomfort diminished. R. at 212-19.

Plaintiff next saw Dr. Bowling on June 10, 2004. Dr. Bowling again described Plaintiff's condition as "stable." R. at 228. He also prepared a Medical Source Statement - Physical ("MSS -P") indicating Plaintiff could lift or carry ten pounds, stand or walk thirty minutes continuously and less than one hour a day, and sit thirty minutes continuously and less than one hour per day. He also indicated Plaintiff's pain would require him to lie down three to four times per day for thirty minutes to an hour each time. R. at 237-38. In a letter written contemporaneously with the MSS-P, Dr. Bowling reiterated Plaintiff suffered from chronic neck and back pain and needed to change positions frequently for comfort, but did not add any further explanation for the MSS-P's contents. R. at 246. Plaintiff returned to Dr. Bowling on October 29, 2004, primarily because he was suffering from a rash unrelated to the conditions at issue in this case. He once again described Plaintiff's back and neck condition as "stable." R. at 326.

On April 29, 2005, Plaintiff saw Dr. Bowling with complaints of popping in his left elbow. He was diagnosed as suffering from bursitis, but his neck and back were again described as "stable." R. at 324. In July he returned to the Mayo Clinic to have his elbow examined. Doctors ultimately determined Plaintiff had a high-grade partial tear of the tendon in the left triceps and recommended outpatient surgery. R. at 334-35. Plaintiff reported the results of this visit to Dr. Bowling in October, but indicated he had not yet arranged for surgery. R. at 321-22.

In November 2005, imaging revealed arthritic changes in Plaintiff's left wrist. R. at 319-20. In December 2005, Plaintiff returned to Dr. Bowling complaining of pain in his wrists -- but apparently said little to nothing about his back or neck. His range of motion in his neck was normal, and his chronic back and neck pain were described as stable. Plaintiff was given wrist splints. R. at 317-18.

In December 2006, Plaintiff underwent a psychological examination performed by David Lutz, Ph.D. Plaintiff told Dr. Lutz the medication that had been prescribed reduced his pain, but he stopped taking them until two months prior to the exam. He wore a brace because had "problems with his legs" that had worsened in the preceding few months. R. at 381.

That same month Plaintiff also underwent a consultative exam performed by an orthopedist (Dr. Michael Clarke). "His chief complaint is low back pain, some dorsal pain and some right knee pain." However, Plaintiff's knee showed a but full range of motion and no instability or other signs of damage or difficulty and an X-ray was largely normal. X-rays of Plaintiff's back showed "severe degenerative changes at L3-L4 and L4-L5 . . . . With a degenerative spondylolisthesis at L3-L4 between 15% and 20% and . . . Marked degenerative changes in the posterior elements. Dr. Clarke opined that Plaintiff probably need fusion at L3, L4 and L5. R. at 426-27.

Dr. Charles Ash performed a consultative examination in January 2007. His examination revealed normal motion in Plaintiff's spine and swelling and cramping in the left triceps. Based on his testing, Dr. Ash concluded Plaintiff could lift twenty pounds occasionally and ten pounds frequently, stand for six hours a day, and sit for six hours a day. He noted Plaintiff's reports of pain, which Dr. Ash regarded as "primarily subjective." R. at 395-400.

During the hearing, Plaintiff testified he experienced migraine headaches every two to three days. He also told the ALJ he experiences constant pain in his back that limits him to standing or walking for twenty minutes at a time, sitting for only fifteen minutes at a time, and requires him to lie down three times a day for up to thirty minutes. R. at 409-13. A vocational expert ("VE") also testified in response to hypothetical questions. When asked to assume an individual of Plaintiff's age, education and experience who was limited in the manner described in Dr. Bowling's MSS-P, the VE testified such an individual could not perform work. R. at 487. However, if the person was limited in the manner described by Dr. Ash, the individual could perform his past work as a license clerk as well as other jobs in the economy. R. at 487-88. The ALJ concluded Plaintiff's residual functional capacity ("RFC") was

4

consistent with Dr. Ash's opinion and, based on the VE's testimony, Plaintiff could perform work in the national economy and was not disabled.

## II. DISCUSSION

"[R]eview of the Secretary's decision [is limited] to a determination whether the decision is supported by substantial evidence on the record as a whole. Substantial evidence is evidence which reasonable minds would accept as adequate to support the Secretary's conclusion. [The Court] will not reverse a decision simply because some evidence may support the opposite conclusion." Mitchell v. Shalala, 25 F.3d 712, 714 (8th Cir. 1994) (citations omitted). Though advantageous to the Commissioner, this standard also requires that the Court consider evidence that fairly detracts from the final decision. Forsythe v. Sullivan, 926 F.2d 774, 775 (8th Cir. 1991) (citing Hutsell v. Sullivan, 892 F.2d 747, 749 (8th Cir. 1989)). Substantial evidence means "more than a mere scintilla" of evidence; rather, it is relevant evidence that a reasonable mind might accept as adequate to support a conclusion. Smith v. Schweiker, 728 F.2d 1158, 1161-62 (8th Cir. 1984). Plaintiff's arguments revolve around two central themes: the ALJ failed to conduct a proper credibility analysis or accord proper weight to Dr. Bowling's MSS-P. The Court disagrees.

The critical issue in this case is not whether Plaintiff experiences pain, but rather the degree of pain that he experiences. House v. Shalala, 34 F.3d 691, 694 (8th Cir.1994). The familiar standard for analyzing a claimant's subjective complaints of pain is set forth in Polaski v. Heckler, 739 F.2d 1320 (8th Cir. 1984) (subsequent history omitted):

> While the claimant has the burden of proving that the disability results from a medically determinable physical or mental impairment, direct medical evidence of the cause and effect relationship between the impairment and the degree of claimant's subjective complaints need not be produced. The adjudicator may not disregard a claimant's subjective complaints solely because the objective medical evidence does not fully support them.

5

> The absence of an objective medical basis which supports the degree of severity of subjective complaints alleged is just one factor to be considered in evaluating the credibility of the testimony and complaints. The adjudicator must give full consideration to all of the evidence presented relating to subjective complaints, including the claimant's prior work record, and observations by third parties and treating and examining physicians relating to such matters as:
>
> 1. The claimant's daily activities;
> 2. the duration, frequency and intensity of the pain
> 3. precipitating and aggravating factors;
> 4. dosage, effectiveness and side effects of medication;
> 5. functional restrictions.
>
> The adjudicator is not free to accept or reject the claimant's subjective complaints solely on the basis of personal observations. Subjective complaints may be discounted if there are inconsistencies in the evidence as a whole.

739 F.2d at 1322.

The Court accepts Plaintiff's argument that subjective complaints of pain cannot be discounted or ignored simply because they are not fully corroborated by objective medical evidence. Nonetheless, medical evidence is a factor that can be considered. Here, the evidence demonstrates a physical condition that is not expected to cause the degree of debilitation Plaintiff alleged. Plaintiff was not given strong pain medication, which is inconsistent with subjective complaints of disabling pain. See Richmond v. Shalala, 23 F.3d 1441, 1443-44 (8th Cir. 1994). Additionally, Plaintiff's statements to his doctors was inconsistent with his testimony: he told doctors at the Mayo Clinic that physical therapy was effective, and he never reported to them – or to Dr. Bowling – the degree of pain he now alleges. He also stated medication was effective in relieving his pain. The failure to follow a physician's advice is also inconsistent with complaints of disabling pain, e.g., Choate v. Barnhart, 457 F.3d 865, 872 (8th Cir. 2006), which is relevant to those periods when Plaintiff stopped doing physical therapy, stopped using

the medication prescribed, or failed to obtain the surgery recommended by the Mayo Clinic.

Generally speaking, a treating physician's opinion is entitled to deference. This general rule is not ironclad; a treating physician's opinion may be disregarded if it is unsupported by clinical or other data or is contrary to the weight of the remaining evidence in the record. E.g., Pena v. Chater, 76 F.3d 906, 908 (8th Cir. 1996). Initially, it is not clear that Dr. Bowling treated Plaintiff's back; the Mayo Clinic seems to have done much more in evaluating and treating Plaintiff's back. Even if Dr. Bowling is to be regarded as Plaintiff's treating physician, Dr. Bowling's contemporaneous notes from Plaintiff's visits contradict the MSS-P.

## III. CONCLUSION

Substantial evidence in the record as a whole justified the ALJ's decision not to credit Dr. Bowling's MSS-P or Plaintiff's testimony. That same evidence supports the ALJ's determination of Plaintiff's residual functional capacity, and the finding Plaintiff was capable of performing work in the national economy is affirmed.

IT IS SO ORDERED.

DATE: December 18, 2008

/s/ Ortrie D. Smith
ORTRIE D. SMITH, JUDGE
UNITED STATES DISTRICT COURT